THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. TAURINO DE JESÚS, Defendant and Appellant.

No. 8310. Argued December 4, 1940.—Decided December 9, 1940.

*Herminio Miranda* for appellant. *George A. Malcolm, Attorney General,* and *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

This appeal has been taken from a judgment of conviction of abandonment of children. Although several witnesses testified, the only evidence which tends to support the complaint is the testimony of the mother of the child who is alleged to have been abandoned. Regarding this evidence the appellant urges that the same is insufficient and that the court in weighing it acted moved by "error, prejudice, and passion." The appellant relies on the case of *People* v. *Rotger,* 55 P.R.R. 133. The prosecuting attorney of this court, in his brief as well as in his oral argument at the hearing, stated the same view as the appellant that the evidence is insufficient in the light of the doctrine laid down in the cited case of *People* v. *Rotger,* and requested that the court reverse the judgment and discharge the defendant. The testimony of the informer mother may be summarized thus:

That the defendant is the father of her child; "that she had a love affair with him" for a period of six months; that she did not live with the defendant but that when she went to get her work and after the same was delivered to her, she used to go to the house of the defendant. That he betrayed her near his house; that the defendant denied that the boy was his child and had never regarded him as such, but she asserts that he is the boy's father; that she never "had to do anything with any other man but him"; that

during the six months she had said affair with the defendant, she did not cohabit with him but occasionally had sexual intercourse with him.

Although the remaining portion of the evidence for the prosecution does not corroborate the testimony of the mother, it does not at all controvert it either. The defendant refrained from giving any evidence. Although the mother of the informer testified also that the defendant was the father of the boy, from her own testimony it appeared that that knowledge was derived from what her daughter had told her, without there being anything in the surrounding circumstances to justify the admission of her testimony as a part of the *res gestae*. It is for that reason that we will disregard her testimony and that we will confine ourselves to that of the informer, notwithstanding the assertion made by the trial judge that the two witnesses had told the truth.

■ In cases of abandonment of children the law does not require that the testimony of the informer should be corroborated. That being so, application must be made of sections 13 and 18 of the Law of Evidence (secs. 375 and 380 of the Code of Civil Procedure, 1933 ed.), which provide:

"Section 375.—That evidence is deemed satisfactory which ordinarily produces moral certainty or conviction in an unprejudiced mind. Such evidence alone will justify a verdict, or judgment.

"Section 380.—The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason."

■ The trial judge who had the opportunity, not available to us, to see and hear the informer testify, to observe her gestures, the inflection of her voice, the expression of her eyes, the assuredness and firmness with which she made her charges probably face to face with the defendant, charging him with having betrayed her and with being the father of her child, asserting besides that she never had any affair with another man, that judge, we repeat, believed that

she told the truth, the impression made on his mind by her statements being so strong that, despite the fact that he thought—erroneously, of course—that a refusal of his judgment by this court might injure his reputation as a judge, he assumed the supposed risk and letting his own conscience speak, he expressed himself as follows:

"I wish to have recorded what I am going to say. This is a case where the evidence introduced is weak. And it may be that this judgment will be reversed, but those two women who testified here to my mind have told the truth; the girl has told the truth and I do not wish to have that burden on my conscience, that believing that they spoke the truth when they stated that the defendant is the father of that boy, he should go unpunished and I should contribute to that result. Although this judgment may be reversed, the court finds him guilty and sentences him to two months in jail, but if he contributes a dollar a week for his support, the sentence will be suspended in order to enable him to remain at large. It is for some purpose that section 18 of the Law of Evidence has been enacted." (Tr. of Ev., p. 7.)

It is true that the judge began by saying that "this is a case where the evidence introduced is weak," but his words should not be interpreted apart from the remaining portion of the paragraph as expressing some doubt as to the guilt of the defendant. What the judge had in mind at that moment was the circumstance of a lack of corroboration, but notwithstanding this, he gave full credit to the testimony of the informer thus showing that he entertained no reasonable doubt which necessarily would have brought about the acquittal of the defendant. Let us examine now our decision in the case of *People* v. *Rotger, supra,* which the defendant, as well as the prosecuting attorney, has invoked in support of a reversal of the judgment. In that case we said:

"Now then, was it proven beyond a reasonable doubt that the appellant knew that the minor, Mérida Pérez, was his daughter? The only evidence presented in regard to this question consisted of the testimony of the mother-complainant, from which it appears that she lived with the accused for about a year without being able to

state exactly when she began to live with him. When asked how long before the birth of the child she lived with the accused, she answered:

" 'I must have lived with him.'

"The district attorney insisted asking the same question again and she then answered:

" 'About two or three months before the child was born.'

"It does not appear from the testimony of this witness that the accused considered the girl as his child neither in public nor in private. Hence, the fact that he helped her or attended her for two or three months and then left as the complainant testified, does not necessarily imply that in helping the child he did so moved by his relation of father and child.

"Since it does not appear from the evidence that at the time the child was conceived the accused lived in concubinage with the complainant nor that he had had sexual contact with her within any determined date within the period of gestation, we must agree with the prosecuting attorney of this court that the evidence does not show beyond a reasonable doubt that the appellant is the father of the child. The testimony of the complainant is perfectly compatible with the existence of sexual relations initiated after the conception of the child. In our opinion, the fourth of the errors alleged, exists. Therefore, the judgment appealed from should be reversed."

From the above excerpt it appears that the reason why this court reversed the judgment entered against Rotger was the fact that the evidence for the prosecution did not exclude the possibility that a man other than the accused might be the father of the girl alleged to have been abandoned. In that case the mother testified that she had lived with the defendant for about a year but without stating exactly when she began to live with him. She answered evasively first, and then admitted that she lived with the defendant for about two or three months before the girl was born; but at no time did she state when they began their love affair. It was that deficiency in the evidence which caused the reversal of the judgment, and the thought of this court was condensed in the following paragraph of the opinion:

"Since it does not appear from the evidence that at the time the child was conceived the accused lived in concubinage with the com-

plainant *nor that he had had-sexual contact with her within any determined date within the period of gestation, we must agree with the prosecuting attorney of this court that the evidence does not show beyond a reasonable doubt that the appellant is the father of the child.* The testimony of the complainant is perfectly compatible with the existence of sexual relations initiated after the conception of the child.'' (Italics ours.)

In the present case, as we have seen, there is no such deficiency of proof. On the contrary, the testimony of the informer, if believed—as it was believed—shows that no other man than the defendant was the father of the child. It might be said that it is dangerous to pass a judgment on the sole testimony of the informer, but apart from the fact that if she were to require a corroboration we would be incorporating in the law something which the lawmaker has not deemed it wise to insert therein, as he has done among other crimes in those of seduction and rape, there is nothing to preclude the defendant from introducing evidence which would overcome that of the prosecution or at least produce a reasonable doubt in the mind of the judge.

We fail to find anything in the record tending to show passion, prejudice, or partiality on the part of the trial judge, and as it has not appeared either that he committed manifest error in the weighing of the evidence, the appeal must be overruled and the judgment appealed from affirmed.